The material circumstances of the case were that the defendant Saltar, who was a regular patrol, associated with him the other defendants, Allen, Bryan, and Singletary, who were not patrols, and went to the plantation of Major Owen, where they found in an outhouse the negro Simon, whom they called upon for a pass, which he produced, written in these words: "Pass Simon, or let Simon pass till Monday morning." It was in the handwriting of the plaintiff's wife, but in his name. Saltar told the negro the pass was not a proper one, and ordered him to strip, on which he attempted to escape, and Allen, who stood in the door, caught him, which enabled Saltar to seize and throw him. But Saltar alone was not strong enough to hold him down, and, calling for aid, Allen and Singletary struck him, and at length, their united efforts and blows, with a stick and with their fists, subdued the negro, and he was whipped.
A physician proved that the temporal artery was divided and (506) that the negro was much weakened by the loss of blood, from the effect of which he could not probably recover in less than three of four weeks; but the wound was not so serious as to do any permanent injury. It appeared, however, on the part of the defendants, that the negro was engaged in some business in smithery within a few days after he was whipped. The only proof against Bryan was, his having gone to the plantation of Owen with Saltar.
The judge instructed the jury that the pass was not a proper one; or, at least, was not sufficient to preclude Saltar from examining the negro, or from using such force as was necessary to compel him to submit to an examination; and that Saltar had a right to command the assistance of the other defendants for that purpose. Still, however, if any of them transcended the necessary limits, and wantonly beat the slave, they became trespassers ab initio.
By the act of 1794, ch. 4, the county courts are authorized to appoint in each captain's district a number not exceeding six discreet and proper persons to be patrollers. The act of 1804, ch. 15, gives the county courts power to appoint, in such manner and in such numbers as they please, and to form rules and regulations for them, etc., and they are to have the same powers and authorities as they (507) had under the act of 1794. The act of 1794 is not repealed, but enlarged, by that of 1804. It does not appear from the case that the county court of Bladen made any rules and regulations under the authority of the last act. Therefore, the patrollers of that county were regulated by the law as it is laid down in the act of 1794. The act says: "It shall be the duty of the patrollers, or two of them at least, appointed as aforesaid, to patrol their respective districts, once at least in two weeks." Section 5 states that the patrollers in each district, or a majority of those present, shall have power to inflict a punishment, etc. I am therefore of opinion, from a full and fair examination of the two acts, that the defendant Saltar had not the right to exercise the powers of a patroller by himself, and as the other defendants were present, aiding and abetting him in an unlawful act, they were all guilty of a trespass.
New trial.
NOTE. — For the appointment and regulation of the patrol as it now exists, see 1 Rev. Stat., ch. 86.
Cited: S. v. Hailey, 28 N.C. 13.